**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————— x

Heather Caputo, individually on : 
behalf of herself and all others similarly : 
situated, : Case No.
 :
 Plaintiff, :
v. :
 :
Goli Nutrition Inc. and Better Nutritionals LLC, : **CLASS ACTION COMPLAINT**
 :
 Defendants. : **JURY TRIAL DEMANDED**
 :
 :
 :

——————————————————— x

Plaintiff Heather Caputo (hereinafter "Plaintiff"), individually on behalf of herself and all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

**NATURE OF THE ACTION**

1.      This action seeks to remedy the deceptive and misleading business practices of Goli Nutrition Inc. and Better Nutritionals LLC, (hereinafter collectively "Defendants") with respect to the marketing and sale of Defendants' Goli Nutrition Ashwagandha Gummies (hereinafter the "Product") throughout the state of New York and throughout the country.

2.      Defendants market a Product that purports to provide sexual function benefits, weight loss and weight management benefits, improve physical performance, and clinically proven to help maintain normal cortisol levels.

3.      Depictions of Defendants' Product and examples of its numerous promotional representations are depicted below:



## Relax. Restore. Unwind.

Goli® Nutrition is an inventive, people focused nutrition company driven by the belief that happiness and wellness go hand in hand. Our goal was to create an easy and delicious way for everyone to enjoy the many benefits of Ashwagandha. Ashwagandha is an ancient herb that has been used for centuries to improve healthy living by helping to relax, restore and unwind.

Our Goli® Ashwa Gummies are made with the "World's Best Ashwagandha" KSM-66® Ashwagandha. KSM-66® has been clinically proven to help maintain normal cortisol levels to promote a healthy response to everyday stress, and to help with memory, cognition, quality of sleep, and more'. KSM-66® has the highest concentration of all major full-spectrum root extracts available on the market today, and is 100% USDA Organic, Non-GMO (Non-GMO Project Verified), Gluten-Free (by GFCO), BSCG-drug free, Kosher, and Halal.



Made with **KSM-66 ® Ashwagandha and Vitamin D** to help:

Reduce Stress &
Promote Relaxation[†]                  ∨          Control Stress Related
                                                  Food Cravings[†]                    ∨

Quality of Life[†]                     ∨          Support Quality of Sleep[†]          ∨

Support a Healthy Immune System[†]     ∨          Support Physical
                                                  Performance & Endurance in Men[†]    ∨

Promote Memory & Concentration[†]      ∨          Support Sexual Function
                                                  in Women Who Need a Boost[†]         ∨

4

# Your body will thank you.

Goli® Ashwa Gummies are made with a unique blend of ingredients that support many incredible benefits! They're made with powerful KSM-66® Ashwagandha Root Extract to help reduce stress & promote relaxation; promote sleep quality; reduce cortisol to help control stress-related food cravings; support sexual function in women who need a boost; support memory & concentration; and Vitamin D to support a healthy immune system and more![†]


**Reduce Stress & Promote Relaxation[†]**


**Control Stress-Related Food Cravings[†]**


**Promote Sleep Quality[†]**


**Support Sexual Function in Women that Need a Boost[†]**


**Support Memory & Concentration**



**KSM-66® Ashwagandha**

The ancient Indian herb, Ashwagandha (Withania somnifera), has been recognized for its medicinal properties for over 5,000 years. It is rooted in Ayurveda, a holistic and natural system of medicine based on the concept that health and wellness depend on a balance between physical and mental health by utilizing natural medicine. Ashwagandha is also an adaptogen—a plant that helps the body maintain balance and adjust to stress. This function of Ashwagandha is well-documented and heavily backed by modern science. KSM-66® Ashwagandha is a highly concentrated Ashwagandha Root Extract unique to the market with extensive research behind it that supports various health benefits.[†]

5





### Your Nightstand

Keep calm and catch some ZZZs with KSM-66® Ashwagandha.[†]

### Your Gym Locker

KSM-66® Ashwagandha is a great addition to your workout routine as it helps support physical performance and endurance in healthy athletic adults.[†]





### Your Desk

Feeling stressed? Only positive vibes allowed here! Clinically-studied KSM-66® Ashwagandha helps reduce cortisol, the stress hormone.[†]

### Kitchen Pantry

Nourish and flourish with KSM-66® Ashwagandha, which helps reduce stress-related food cravings.[†]





### Your Bag

Restore on the go with KSM-66® Ashwagandha root extract.[†]

### Your "Private" Drawer

KSM-66® Ashwagandha supports sexual function in women whose sex life needs a boost.[†]

4.     However, Defendants' claims, representations, and warranties are false and misleading since the Product does not provide any of its purported benefits.

5.     The Product consists of two active ingredients, KSM-66 Ashwagandha Root Extract (hereinafter "ashwagandha") and vitamin D.

6.     Unfortunately, for consumers, as described in greater detail below, ashwagandha and vitamin D do not provide sexual function benefits, weight loss and weight management benefits, improve physical performance, or is clinically proven to help maintain normal cortisol levels.

7.     Plaintiff and those similarly situated ("Class Members") relied on Defendants' misrepresentations that the Product provides sexual function benefits, weight loss and weight management benefits, improve physical performance, and clinically proven to help maintain normal cortisol levels.  Absent these misrepresentations, Plaintiff and Class Members would not have purchased the Product.  Given that Plaintiff and Class Members paid for a Product they would not otherwise have purchased and/or paid a premium for the Product based on Defendants' misrepresentations, Plaintiff and Class Members suffered an injury in the amount of the purchase price of the Product and/or premium paid.

8.     Defendants' conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350, and the consumer protection statutes of all 50 states. Defendants breached and continue to breach their warranties regarding the Product.  Accordingly, Plaintiff brings this action against Defendants on behalf of herself and Class Members who purchased the Product during the applicable statute of limitations period (the "Class Period").

# FACTUAL BACKGROUND

**The Herbal Supplement Industry**

9.      The dietary supplement market is one of the fastest growing, competitive, and lucrative industries in the world, with revenues predicted to reach over $230 billion by 2027.[1]

10.      Since dietary supplements are intended to add on to foods that are already found in the human diet, most of the effects of the ingredients are relatively mild.  To gain a competitive advantage, some companies deceptively claim that a recently discovered ingredient (or combination of ingredients) will deliver dramatic differences in chronic physiological and psychological conditions.  Since many of these conditions should be assessed and treated by a physician, marketing practices promising relief to certain ailments are also dangerous.

11.      The herbal supplement market is a subset of the dietary supplement market that suffers from the same deceptive practices as the industry as a whole.  Herbal supplements are products derived from plants and/or their oils, roots, seeds, berries, or flowers as a complementary health approach.  Herbal supplements are believed to have healing properties.  The United States Centers for Disease Control (hereinafter "CDC") has stated that more than half of the people in the country take a daily herbal supplement.[2]  Herbal Supplements can be used internally or externally and there are many herbal supplements that have different uses and purported effects.

12.      The herbal supplement industry has experienced significant growth over the past few years, driven by the growing health concerns and spending by consumers.[3]

---

[1] https://www.prnewswire.com/news-releases/dietary-supplements-market-size-worth-230-7-billion-by-2027--cagr-8-2-grand-view-research-inc-301057378.html
[2] https://my.clevelandclinic.org/health/drugs/15829-herbal-supplements.
[3] https://www.prnewswire.com/in/news-releases/herbal-supplement-market-size-usd-8983-6-million-by-2026-at-cagr-3-3-valuates-reports-863432911.html.

13.     For example, the global herbal supplements market was valued at $5.26 billion in 2017[4] and the size of the market continues to increase.  Herbal supplement market sales increased by 8.6% in 2019 with record breaking sales predicted for 2020.[5]

14.     The herbal supplement industry is in the midst of a thriving market; however, such great sales conditions have created the perfect storm for unscrupulous manufacturers, including the Defendants, to take advantage of consumers.

15.     Companies are drawn to the industry by increasingly attractive sales numbers.  The same companies gain market share and increase profits by misleading consumers regarding the quality and benefits of using their products despite the fact that there is a dearth of legitimate, randomized, and controlled trials that support these same companies' claimed efficacy and safety of dietary supplements.

16.     Defendants' deceptive acts, practices, and false advertising provide strong evidence of this pattern.

**Defendants' Claims Regarding the Benefits that the Product Provides are Deceptive and Misleading**

17.     Defendants' manufacture, market, and sell the Product as being able to provide sexual function benefits, weight loss and weight management benefits, improve physical performance, and clinically proven to help maintain normal cortisol levels.

18.     For a claim to be considered scientifically and clinically proven, as Defendants claim for their Products, the claim must be widely accepted in its applicable field and have overwhelming evidence supporting it.[6]  Moreover, there must be a consensus in the scientific

---

[4] https://www.grandviewresearch.com/industry-analysis/herbal-supplements-market.
[5] https://www.globenewswire.com/news-release/2020/08/31/2086400/0/en/US-Herbal-Supplement-Sales-Increase-by-8-6-in-2019-Record-Breaking-Sales-Predicted-for-2020.html.
[6] Bauchner H, Golub RM, Fontanarosa PB. Reporting and Interpretation of Randomized Clinical Trials. *JAMA*. 2019;322(8):732-735; Kirman CR, Simon TW, Hays SM. Science Peer Review for the 21st century: Assessing

community agreeing with the representations.[7]  Such consensus would require, at a minimum,

sufficiently large, randomized, controlled, double-blind studies that have been scrutinized by peer

review during the publication process and subjected to scholarly debate by diverse panels of

scientific experts.[8]  Additionally, scientific consensus requires that published results be

independently replicated by others using rigorous experimental design and data collection

practices.[9] If specific representations do not meet these standards, they cannot be considered

"scientifically and clinically proven" nor can they be considered to have reached scientific

consensus.[10]

19.     Despite Defendants' marketing and labeling, scientific studies demonstrate that the

Product does not provide sexual function benefits, weight loss and weight management benefits,

improve physical performance, or clinically proven to help maintain normal cortisol levels as

Defendants deceive consumers to believe.

20.     For example, Defendants purport that the Product can help men and women with

sexual dysfunction; however, studies demonstrate that ashwagandha does not help with sexual

function as explained below:

    a.    A 2011 study investigated the use of ashwagandha for psychogenic erectile
dysfunction (hereinafter "ED"), which is primarily associated with sexual anxiety
and worries about sexual performance.[11]  In the study, 86 men with psychogenic
ED received either ashwagandha or a placebo for 60 days.[12]  Overall, ashwagandha

---

Scientific Consensus for Decision-making while Managing Conflict of Interests, Reviewer and Process Bias. *Regul Toxicol Pharmacol*. 2019; 103:73-85.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] Prasad Mamidi, et al., *Efficacy of Ashwagandha (Withania somnifera Dunal. Linn.) in the management of psychogenic erectile dysfunction*, Int. J. Res. Ayurveda Pharm., 2011 Jul-Sep; 32(3):322-328.
[12] *Id.*

did not provide any more relief for ED than the placebo.[13]   Moreover, a 2014 follow-up analysis by the same research group confirmed these findings.[14]

b.   In a 2015, a group of 50 women experiencing sexual dysfunction participated in a randomized study that assessed, in relevant part, whether ashwagandha helped improve sexual function.[15]   The study found there was no significant improvement when the ashwagandha treated group was compared with the placebo group in terms of the total number of sexual encounters after four and eight weeks.[16]

21.   Defendants also claim that the Product can help with weight loss and weight management.

22.   Defendants' weight loss and weight management claims are extremely worrisome because in the United States obesity prevalence was 41.9% in 2017 through March 2020[17] and reasonable consumers believing the Product's diet representations may forego a professional weight loss evaluation and treatment.

23.   Moreover, according to the CDC, obesity is also, "a common, serious, and costly disease," and associated with heart disease, stroke, type-2 diabetes, and cancers of the leading causes of preventable premature death.[18]

24.   To the detriment of consumers, like the Plaintiff, Defendants claim that their Product can help with weight loss and weight management with disregard to America's obesity problem while ignoring the recommendations of physicians with expertise in alternative medicine, such as ashwagandha.

25.   With that in mind, Dr. Ratnaprabha Chaudhari, BAMS, MD, Swasthvritta and Yoga), PhD (Sch), MD (Alternative Medicine), PGDEMS, PGDIHM, specifically stated that

---

[13] *Id.*

[14] Prasad Mamidi, et al., *Ashwagandha in Psychogenic Erectile Dysfunction: Ancillary Findings*, Int. J. Res. Ayurveda Pharm., 5(1), Jan – Feb 2014,

[15] Swati Dongre, et al., *Efficacy of Ashwagandha (Withania somnifera) Root Extract in Improving Sexual Function in Women: A Pilot Study*, Biomed Res Int., 2015; 2015: 284154.

[16] *Id.*

[17] https://www.cdc.gov/obesity/data/adult.html.

[18] *Id.*

although it has become popular belief that ashwagandha can help with weight loss and management, that ashwagandha has no direct action on weight loss and that using it in such a manner is inappropriate.[19]  It was also stated by *Akeso Health Sciences* that ashwagandha is not directly associated with weight loss.[20]

26.     As for physical performance, Defendants' make ill-founded representations that the Product can help improve endurance; however, studies have concluded that this is not the case:

    a.     A 2019 study assessed the relationship between vitamin D and its impact on athletic performance, physical efficiency, exercise, and performance.[21]  It was concluded that there are many incompatible reports about the correlation between vitamin D supplementation and exercise performance for athletes.[22]  Thus, the study found recommending vitamin D supplementation for physical performance remains uncertain.[23]

    b.     An earlier 2013 study found similar results.[24]  Specifically, the authors researched the suggested vitamin D impact on physical performance and found that there is no conclusive evidence to support the claim that vitamin D supplementation can help with physical performance, especially endurance training.[25]

27.     Defendants' also claim that the Product is clinically proven to help maintain normal cortisol levels.  Unfortunately for consumers, Defendants' Product does not help maintain normal cortisol levels.  This poses serious danger to its consumers, who purchase and consume Defendants' Product based on their representations, in lieu of a professional medical evaluation and treatment.

28.     Ashwagandha does not have any effect on cortisol levels.  Indeed, a 16-week, randomized, double-blind, placebo-controlled, crossover study tested the effect of Ashwagandha

---

[19] https://manmatters.com/blog/ashwagandha-for-weight-loss/.
[20] https://www.migrelief.com/ashwagandha-for-weight-loss/.
[21] Michael Wicinski, et al., *Impact of Vitamin D on Physical Efficiency and Exercise Performance—A Review,* Nutrients, 2019 Nov; 11(11): 2826.
[22] *Id.*
[23] *Id.*
[24] Dana Ogan, et al., *Vitamin D and the Athlete: Risks, Recommendations, and Benefits*, Nutrients, 2013 Jun; 5(6): 1856-1868.
[25] *Id.*

on cortisol levels and determined that there was no statistical difference in cortisol levels between those that used Ashwagandha versus those that used the placebo.[26]

**The National Advertising Division's Findings Regarding the Product's Misrepresentations**

29.    On May 25, 2022, The National Advertising Division ("NAD") of BBB National Programs, an independent non-profit organization that independently evaluates the truth and accuracy of national advertising[27], expressed concerns with several methodological flaws in Defendants' studies on ashwagandha and vitamin D that undermined the reliability of Defendants' representations.[28]

30.    To that effect, the NAD recommended that Defendants discontinue their claims regarding the Products' efficacy with providing sexual function benefits, weight loss and weight management benefits, improving physical performance, and implied claims.[29]

### NAD Recommends that Defendants Discontinue Their Sexual Function Claims

31.    Defendants purport that the Product can help with sexual dysfunction.

32.    After review of Defendants' sexual function claims, the NAD determined that the Defendants lacked a reasonable basis for unqualified claims that the Product can help with sexual dysfunction.[30]

33.    Thus, the NAD recommended that Defendants discontinue the following sexual efficacy claims for the Product:

- "Supports Sexual Health in Both Men and Women;" and

- "Did you know that many women experience sexual dysfunction with orgasm disorders and sexual difficulties?  That's why Goli Nutrition created Ashwagandha Gummies,

---

[26] Adrian L. Lopresti, *A Randomized, Double-Blind, Placebo-Controlled, Crossover Study Examining the Hormonal and Vitality Effects of Ashwagandha (Withania somnifera) in Aging, Overweight Males*, Am J Mens Health, 2019 Mar-Apr; 13(2): 1557988319835985.
[27] https://bbbprograms.org/programs/all-programs/national-advertising-division.
[28] https://bbbprograms.org/media-center/newsroom/goli-nutrition-ashwagandha-gummies/.
[29] *Id.*
[30] *Id.*

made with KSM-66 Ashwagandha, the World's Most Powerful Ashwagandha root extract!"[31]

34. Further, the NAD concluded that Defendants' studies did not provide support for their claims that ashwagandha can improve sexual function in both men and women since there were certain flaws that rendered the studies a poor fit for the sexual function claims.[32]

35. Consequently, the NAD additionally recommended that Defendants discontinue the following claims:

- "KSM-66 Ashwagandha has been clinically proven to help improve sexual function;" and

- "Ashwagandha… has been shown to… improve[] sexual function and arousal in healthy women."[33]

36. The NAD also determined that the Defendants' claim, "Ashwagandha = Nature's Aphrodisiac!" was not puffery, but rather, in context, would mislead a reasonable consumer to believe that ashwagandha could increase sexual desire and thus recommended this representation should be removed.[34]

37. As for the claim that, "Ashwagandha… has been shown to increase testosterone levels, sperm mortality, and sperm count in men," the NAD determined that Defendants' evidence did not support the sexual function claims. Therefore, the NAD recommended that this claim be discontinued as well.[35]

---

[31] *Id.*
[32] *Id.*
[33] https://bbbprograms.org/media-center/newsroom/goli-nutrition-ashwagandha-gummies.
[34] *Id.*
[35] *Id.*

***NAD Recommends that Defendants Discontinue Their Weight Loss and Weight Management Claims***

38.     Defendants claim that the Product can help with weight loss and weight management.

39.     However, after the NAD considered evidence provided by Defendants to determine if they had provided competent and reliable scientific evidence to support claims that the Product's ingredients are clinically proven to provide weight loss and weight management benefits, it was concluded that Defendants' claims could not be supported.[36]

40.     Moreover, the NAD expressed concerns with several methodological flaws in Defendants' study on ashwagandha that undermined the reliability of the results.[37]  The NAD also found that the results of its ashwagandha study, and its vitamin D study, to be a poor fit for the challenged weight loss and weight maintenance claims.[38]

41.     Thus, NAD recommended that Defendants discontinue the following claims:

- "KSM-66 Ashwagandha, plus vitamin D are clinically proven to help support weight management;"

- "KSM-66 Ashwagandha has been clinically proven to… Reduce and maintain healthy body weight;" and

- "Research shows that by lowering cortisol levels, KSM-66 Ashwagandha can help reduce stress-related food cravings and weight gain."[39]

***NAD Recommends that Defendants Discontinue Their Physical Performance Claims***

42.     Defendants claim that the Product can provide various physical performance benefits.

---

[36] *Id.*
[37] *Id.*
[38] https://bbbprograms.org/media-center/newsroom/goli-nutrition-ashwagandha-gummies.
[39] *Id.*

43.     Specifically, the NAD found, after reviewing Defendants' studies, as well as the expert statements submitted by the Defendants, that the Defendants' evidence did not support its physical performance claims.[40]

44.     Accordingly, NAD recommended that Defendants discontinue the following claims:

- "KSM-66 Ashwagandha has been clinically proven to… help support physical endurance, strength, and muscle size;"

- "KSM-66 Ashwagandha, plus vitamin D are clinically proven to help: Improve Physical Performance;" and

- "Goli Ashwa Gummies are made with KSM-66 Ashwagandha, clinically proven to help increase Muscle Size in Men."[41]

45.     As for the claim, "[s]tudies have also shown that KSM-66 Ashwagandha could improve muscle size and strength as well as supporting natural testosterone production," the NAD advised that the claim be modified or should be discontinued if not altered.[42]

***NAD Recommends that Defendants Discontinue Their Implied Claims and Accompanying Federal and State Law Violations***

46.     Defendants make several implied claims, which NAD has recommended should be discontinued due to lack of Product testing and failure to prove the Product's efficacy.[43]  Due to this, the NAD found that Defendants' representations are unsupported.[44]

47.     Therefore, the NAD recommended the following implied Product efficacy claims be discontinued:

- Goli Ashwagandha Gummies support weight loss and weight management, improve sexual function, and improve physical performance;

---

[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] https://bbbprograms.org/media-center/newsroom/goli-nutrition-ashwagandha-gummies.
[44] *Id.*

- Goli Ashwagandha Gummies' purported benefits are achievable by the general U.S. population, without any meaningful changes in lifestyle;

- Taking Goli Ashwagandha Gummies will result in the purported benefits Goli claims are attributable to KSM-66 Ashwagandha;

- Taking Goli Ashwagandha Gummies will quickly result in meaningful weight loss without the need for special diet or exercise;

- Taking Goli Ashwagandha Gummies will result in meaningful weight loss in all consumers;

- Taking Goli Ashwagandha Gummies will treat or cure female orgasm disorders;

- Taking Goli Ashwagandha Gummies will treat or cure male fertility disorders;

- Taking Goli Ashwagandha Gummies will support physical performance, endurance, and muscle size regardless of an individual's physical condition or fitness level;

- Taking Goli Ashwagandha Gummies will result in meaningful endurance and physical performance benefits without the need for special diet or exercise; and

- Taking Goli Ashwagandha Gummies will increase muscle size without the need for special diet or exercise.[45]

48.     Additionally, the NAD concluded that Defendants' advertising does not convey the implied suggestions:

- Influencers discussing the Product on social media are expressing their honestly held beliefs, findings, and opinions without any material connection with Defendants; and

- Influencers discussing the Product on social media do so solely out of a desire to share their positive experiences with the Product.[46]

49.     Plaintiffs and Class Members would not have purchased the Product (or would not have paid as much for the Product) had they known the truth about the falsely advertised Product.

---

[45] *Id.*
[46] *Id.*

## PLAINTIFF'S CLAIMS

50.     Defendants intended for Plaintiff and the Class Members to be deceived or misled.

51.     Through their deceptive advertising and labeling, Defendants have violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge, is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

52.     Consumers rely on marketing and information in making purchasing decisions.

53.     By marketing the Product as having the ability to provide sexual function benefits, weight loss and weight management benefits, improve physical performance, and clinically proven to help maintain normal cortisol levels and by placing this representation in a prominent location on the labels of the Product throughout the Class Period, Defendants know that these claims are material to consumers.

54.     Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

55.     Plaintiff and the Class Members reasonably relied to their detriment on Defendants' misleading representations and omissions.

56.     Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

18

57.     In making the false, misleading, and deceptive representations and omissions described herein, Defendants know and intended that consumers would pay a premium for a product marketed as having the ability to provide sexual function benefits, weight loss and weight management benefits, improve physical performance, and clinically proven to help maintain normal cortisol levels over comparable products not so marketed.

58.     As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendants injured Plaintiff and the Class Members in that they:

    a.    Paid a sum of money for a Product that was not what Defendants represented;

    b.    Paid a premium price for a Product that was not what Defendants represented;

    c.    Were deprived of the benefit of the bargain because the Product they purchased was different from what Defendants warranted; and

    d.    Were deprived of the benefit of the bargain because the Product they purchased had less value than what Defendants represented.

59.     Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Product they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Product.

60.     Plaintiff and the Class Members paid for a Product that provides sexual function benefits, weight loss and weight management benefits, improve physical performance, and clinically proven to help maintain normal cortisol levels. and that they believed were clinically proven to do so.  Since the Product does not do these things, the Product Plaintiff and the Class Members received was worth less than the Product for which they paid.

19

61.    Plaintiff and the Class Members all paid money for the Product; however, Plaintiff and the Class Members did not obtain the full value of the advertised Product due to Defendants' misrepresentations and omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Product than they would have had they known the truth about the Product.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

62.    Plaintiff and Class Members read and relied on Defendants' representations about the benefits of using the Product and purchased Defendants' Product based thereon.  Had Plaintiff and Class Members known the truth about the Product, i.e., that it does not have the benefit it says it does (i.e. provide sexual function benefits, weight loss and weight management benefits, improve physical performance and clinically proven to help maintain normal cortisol levels), they would not have been willing to purchase it at any price, or, at minimum would have paid less for it.

## JURISDICTION AND VENUE

63.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d), in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the state of New York, Defendant Goli Nutrition Inc. is a citizen of Delaware and California, and Defendant Better Nutritionals LLC is a citizen of California; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

64.    This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

65.     Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

**PARTIES**

**Plaintiff**

66.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen of New York State.  Plaintiff purchased the Product during the Class Period.  More specifically, Plaintiff purchased the Product for her personal use in 2022 for a purchase price of $18.95 on Amazon.com.  Plaintiff purchased the Product in the state of New York and had the product shipped to her home in the state of New York.  Prior to purchasing the Product, Plaintiff read the Product's marketing and relied on the representations that the Product provide sexual function benefits, weight loss and weight management benefits, improve physical performance and clinically proven to help maintain normal cortisol levels.

67.     Plaintiff purchased the Product in reliance on Defendants' representation that the Product can provide sexual function benefits, weight loss and weight management benefits, improve physical performance and clinically proven to help maintain normal cortisol levels.  Plaintiff believes that products that can provide sexual function benefits, weight loss and weight management benefits, improve physical performance and clinically proven to help maintain normal cortisol levels.  If the Product actually can provide sexual function benefits, weight loss and weight management benefits, improve physical performance and was clinically proven to help maintain normal cortisol levels as represented, Plaintiff would purchase the Product in the immediate future.

68.     Had Defendants not made the false, misleading, and deceptive representations that the Product can provide sexual function benefits, weight loss and weight management benefits, improve physical performance and clinically proven to help maintain normal cortisol levels Plaintiff would not have been willing to pay the same amount for the Product, and, consequently, would not have been willing to purchase the Product.  Plaintiff purchased, purchased more of and paid more for, the Product than he would have had he known the truth about the Product.  The Product Plaintiff received was worth less than the Product for which she paid.  Plaintiff was injured in fact and lost money as a result of Defendants' improper conduct.

**Defendants**

69.     Defendant, Goli Nutrition Inc., is a Delaware corporation with its headquarters in West Hollywood, CA.  Goli Nutrition Inc. directs its product into the stream of commerce in the United States by promoting, distributing, marketing, shipping, offering, and selling its Products throughout the United States (both at retail and online), including the state of New York.

70.     Defendant, Better Nutritionals LLC, is a California corporation with its headquarters in Gardena, California.  Better Nutritionals LLC manufactures, packages, and labels the Product and shares a facility with Goli Nutrition Inc. in Norco, California.

71.     Defendants' manufacture, market, advertise, and distribute the Product throughout the United States.  Defendants created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Product.

## CLASS ALLEGATIONS

72.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendants orchestrated deceptive marketing and labeling

practices. Defendants' customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

73.     The Class is defined as all consumers who purchased the Product anywhere in the United States during the Class Period (the "Class").

74.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Product in the state of New York at any time during the Class Period (the "New York Subclass").

75.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

76.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

77.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendants' deceptive and misleading practices.

78.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

   a.     Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Product;

   b.     Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Product;

c.      Whether Defendants made false and/or misleading statement to the Class and the public concerning the contents of their Product;

d.      Whether Defendants' false and misleading statements concerning their Product was likely to deceive the public; and

e.      Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

79.    <u>Typicality</u>: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendants' Product. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

80.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class and she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

81.    <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

82.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.      The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.     The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.     When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.     This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.     Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.     This class action will assure uniformity of decisions among Class Members;

g.     The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.     Class Members' interests in individually controlling the prosecution of separate actions is outweighed by its interest in efficient resolution by single class action; and

i.     It would be desirable to concentrate in this single venue the litigation of all class members who were induced by Defendants' uniform false advertising to purchase its Product because it can provide sexual function benefits, weight loss and weight management benefits, improve physical performance, and clinically proven to help maintain normal cortisol levels.

83.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

84.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

85.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

86.     The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages.

87.     Defendants misleadingly, inaccurately, and deceptively advertise and market the Product to consumers.

88.     Defendants' improper consumer-oriented conduct—including labeling and advertising the Product as having the ability to provide sexual function benefits, weight loss and weight management benefits, improve physical performance, or clinically proven to help maintain normal cortisol levels—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendants' Product and to use the Product when they otherwise would not have.  Defendants made it untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

89.     Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for a Product that—contrary to Defendants' representations— do not provide a can provide sexual function benefits, weight loss and weight management benefits, improve

physical performance, or clinically proven to help maintain normal cortisol levels.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

90.    Defendants' advertising and Product's labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Product and to pay a premium price for it.

91.    Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

92.    As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory damages of $50 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

93.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

109.    N.Y. Gen. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

110.    N.Y. Gen. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be

27

taken into account (among other things) not only representation made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

111.    Defendants' labeling and advertisements contain untrue and materially misleading statement concerning Defendants' Product inasmuch as they misrepresent that the Product can provide sexual function benefits, weight loss and weight management benefits, improve physical performance, and clinically proven to help maintain normal cortisol levels.

112.    Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the Product which — contrary to Defendants' representation— cannot provide sexual function benefits, weight loss and weight management benefits, improve physical performance, or clinically proven to help maintain normal cortisol levels.   Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

113.    Defendants' advertising and product labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Product.

114.    Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

115.    Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

116.    Defendants made the material misrepresentation described in this Complaint in Defendants' advertising and on the Product's labeling.

117.    Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Product were and continue to be exposed to Defendants' material misrepresentations.

118.    As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory damages of $500 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
#### (On Behalf of Plaintiff and All Class Members)

119.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

120.    Defendants provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Product provides can provide sexual function benefits, weight loss and weight management benefits, improve physical performance, and clinically proven to help maintain normal cortisol levels..

121.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

122.    These affirmations of fact became part of the basis for the bargain and were material to Plaintiff's and Class Members' transactions.

123.    Plaintiff and Class Members reasonably relied upon Defendants' affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendants' Product.

124.     Within a reasonable time after she knew or should have known of Defendants'
breach, Plaintiff, on behalf of herself and Class Members, placed Defendants on notice of its
breach, giving Defendants an opportunity to cure its breach, which it refused to do.   More
specifically, on or about July 27, 2022, Plaintiff -- by way of counsel -- sent a letter via overnight
mail to Defendant along with a Draft Complaint (which included a breach of express warranty
cause of action and which was materially and substantively similar to the Complaint that was
ultimately filed).   The letter indicated, among other things, that Defendant was engaging in
deceptive acts and practices by falsely warranting that its Product provides sexual function
benefits, weight loss and weight management benefits, improves physical performance, and is
clinically proven to help maintain normal cortisol levels when in fact they do not.   The letter also
indicated that the Draft Complaint or a version thereof would be filed if Defendant did not cure its
breach within 10 business days.

125.     Defendants thereby breached the following state warranty laws:

    a.     Code of Ala. § 7-2-313;

    b.     Alaska Stat. § 45.02.313;

    c.     A.R.S. § 47-2313;

    d.     A.C.A. § 4-2-313;

    e.     Cal. Comm. Code § 2313;

    f.     Colo. Rev. Stat. § 4-2-313;

    g.     Conn. Gen. Stat. § 42a-2-313;

    h.     6 Del. C. § 2-313;

    i.     D.C. Code § 28:2-313;

    j.     Fla. Stat. § 672.313;

k.      O.C.G.A. § 11-2-313;

l.      H.R.S. § 490:2-313;

m.      Idaho Code § 28-2-313;

n.      810 I.L.C.S. 5/2-313;

o.      Ind. Code § 26-1-2-313;

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.      Neb. Rev. Stat. § 2-313;

bb.      Nev. Rev. Stat. Ann. § 104.2313;

cc.      R.S.A. 382-A:2-313;

dd.      N.J. Stat. Ann. § 12A:2-313;

ee.      N.M. Stat. Ann. § 55-2-313;

ff.      N.Y. U.C.C. Law § 2-313;

gg.      N.C. Gen. Stat. § 25-2-313;

hh.   N.D. Cent. Code § 41-02-30;

ii.   Il. O.R.C. Ann. § 1302.26;

jj.   12A Okl. St. § 2-313;

kk.   Or. Rev. Stat. § 72-3130;

ll.   13 Pa. Rev. Stat. § 72-3130;

mm.   R.I. Gen. Laws § 6A-2-313;

nn.   S.C. Code Ann. § 36-2-313;

oo.   S.D. Codified Laws, § 57A-2-313;

pp.   Tenn. Code Ann. § 47-2-313;

qq.   Tex. Bus. & Com. Code § 2.313;

rr.   Utah Code Ann. § 70A-2-313;

ss.   9A V.S.A. § 2-313;

tt.   Va. Code Ann. § 59.1-504.2;

uu.   Wash. Rev. Code Ann. § 6A.2-313;

vv.   W. Va. Code § 46-2-313;

ww.   Wis. Stat. § 402.313; and

xx.   Wyo. Stat. § 34.1-2-313.

126.   Defendants breached the express warranty because the Product cannot provide sexual function benefits, weight loss and weight management benefits, improve physical performance, or clinically proven to help maintain normal cortisol levels.

127.   As a direct and proximate result of Defendants' breach of the express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Product, in an amount to be proven at trial.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Awarding monetary damages and treble damages;

(c) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(d) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(e) Awarding punitive damages;

(f) Awarding Plaintiff and Class Members its costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(g) Granting such other and further relief as the Court may deem just and proper.

Dated: September 9, 2022

Respectfully submitted

**THE SULTZER LAW GROUP P.C.**

Jason P. Sultzer /s/

By: _____

Jason P. Sultzer, Esq.
Daniel Markowitz, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

Nick Suciu III, Esq.*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel.: (313) 303-3472
Fax: (865) 522-0049
nsuciu@milberg.com

Gary M. Klinger, Esq.*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel.: (866) 252-0878
Fax: (865) 522-0049
gklinger@milberg.com

Zoe T. Aaron, Esq.*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
405 E 50th Street
New York, NY 10022
Tel.: (630) 796-0903
Fax: (865) 522-0049
zaaron@milberg.com

*Counsel for Plaintiff and the Class*

*\*Pro Hac Vice Application Forthcoming*